**IN THE UNITED STATES BANKRUPTCY COURT FOR
THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| IN RE:<br><br>CARIBBEAN MOTEL CORPORATION,<br><br>       DEBTOR. | CASE NO. 21-01831 (EAG)<br>Chapter 11 (Subchapter V)<br><br>FILED & ENTERED ON 1/5/2022 |

**OPINION AND ORDER**

Three contested matters between debtor Caribbean Motel Corporation and creditor OSP Consortium LLC are pending before the court: (i) OSP's motion to prohibit the debtor's use of cash collateral [Dkt. No. 16]; (ii) OSP's motion requesting the redesignation of the debtor to a single asset real estate debtor [Dkt. No. 48]; and (iii) OSP's election under section 1111(b)(2) of the Bankruptcy Code for the treatment of its secured claim [Dkt. No. 81] and the debtor's opposition to the election [Dkt. No. 92].[1] For the reasons stated below, the court denies dockets number 16, 48 & 92 and allows docket number 81.

## I.     JURISDICTION

This court has jurisdiction over the subject matter and the parties pursuant to 28 U.S.C. §§ 1334 and 157(a), Local Civil Rule 83K(a), and the General Order of Referral of Title 11 Proceedings to the United States Bankruptcy Court for the District of Puerto Rico

---

[1] Unless otherwise indicated, the terms "Bankruptcy Code," "section" and "§" refer to title 11 of the United States Code, 11 U.S.C. §§ 1010-1532, as amended. All references to "Bankruptcy Rule" are to the Federal Rules of Bankruptcy Procedure, and all references to "Rule" are to the Federal Rules of Civil Procedure. And all references to "Local Civil Rule" are to the Local Rules of Civil Practice of the United States District Court for the District of Puerto Rico.

dated July 19, 1984 (Torruella, C.J.). This is a core proceeding in accordance with 28 U.S.C. § 157(b).

## II.     PROCEDURAL BACKGROUND

The debtor filed its voluntary petition for relief under subchapter V of chapter 11 on June 15, 2021. [Dkt. No. 1.]  On June 23, 2021, OSP filed a motion to prohibit use of cash collateral and for entry of order authorizing OSP to seek and collect proceeds. [Dkt. No. 16.] On July 2, 2021, OSP filed a secured proof of claim in the amount of $3,122,439.16. [Claim Register No. 1-1.] On July 12, 2021, the debtor opposed OSP's motion to prohibit use of cash collateral. [Dkt. No. 24.]  On July 28, 2021, OSP replied to the debtor's opposition. [Dkt. No. 35.]

On August 2, 2021, OSP filed a motion requesting the entry or order for the redesignation of the debtor as a single asset real estate debtor. [Dkt. No. 48.]  On August 4, 2021, the debtor filed amended Schedule D listing $550,000 as the value of OSP's collateral. [Dkt. No. 51.] On August 23, 2021, the debtor opposed the redesignation to single asset real estate. [Dkt. No. 63.]

On September 8, 2021, OSP filed a motion to inform it had elected treatment of its claim under section 1111(b)(2). [Dkt. No. 81.]  On September 13, 2021, the debtor filed its subchapter V plan. [Dkt. No. 82.] The court scheduled the confirmation hearing for November 3, 2021. [Dkt. No. 83.]  On October 4, 2021, the debtor opposed OSP's 1111(b)(2) election. [Dkt. No. 92.]

On October 13, 2021, the parties moved the court for a continuance of the confirmation hearing to focus on settlement negotiations. [Dkt. No. 93.]  The court granted the request and continued the hearing to December 15, 2021. [Dkt. No. 94.]  On December 2,

2021, the debtor requested that the confirmation hearing be continued again to finalize settlement negotiations, but OSP opposed the request. [Dkt. Nos. 107 & 110.]  On December 3, 2021, the court converted the confirmation hearing into a status conference. [Dkt. No. 111.]  A status conference is set for January 26, 2022. [Dkt. No. 115.]  On December 15, 2021, OSP filed a motion to inform the status of the case. [Dkt. No. 116.]  The debtor replied to OSP's motion on December 30, 2021. [Dkt. No. 125.]

### III.    MOTEL CARIBBEAN

The debtor owns real estate property in Cabo Rojo, Puerto Rico, encumbered by a mortgage lien in favor of OSP. [Dkt. No. 1, p. 19; Dkt. No. 82, p. 1.]  The debtor's real estate property is described in the Property Registry records as follows:

> RURAL PARCEL: Lot comprised of 5.7911 cuerdas, equivalent to 22,761.2144, square meters, in the Guanajibo Ward of the municipality of Cabo Rojo, Puerto Rico. Bordered on the North, with a public use parcel which in turn borders with state highway number 114, on the South, with lands of Western Coffee Corporation before Antonio Acevedo, on the East, with parcel dedicated to public use which in turn borders with a neighborhood trail; and on the West, with terrains belonging to Dora Ramirez de Esteves y de Raquel Cima de Villa.

[Claims Register No. 1-1, part 9, translation ours.]  The property is recorded on page 250 of volume 384, lot number 13,536, Property Registry of San Germán, Cabo Rojo Section. [Id.] The property was mortgaged through mortgage deed number 1,182 executed on December 3, 2003, before Notary Public Francisco J. Biaggi Landrón to secure a mortgage note in the amount of $2,415,700.00 executed on the same date before the same notary public. [Id.] The mortgage deed was duly registered and recorded pre-petition in the Property Registry of San Germán, Cabo Rojo Section, at page 154 of volume 837, 3rd inscription. [Id.]

OSP filed a secured claim in the amount of $3,122,439.16. [Claims Register No. 1-1.] The debtor listed in amended Schedule A/B the property's market value at $550,000.[2] [Dkt. No. 50, p. 4.]

The debtor operates the "Motel Caribbean" which consists of a 40-room motel, 22 of which are operational. [Dkt. No. 63, ¶ 23.] Although Motel Caribbean is a by-the-hour motel, guests must pay a minimum of 8 hours per visit. [Id.]

The debtor's operations require 9 to 11 employees to assist motel guests in checking-in, answer requests for food, accept payments, give routine maintenance upon the guests leaving the rooms, clean and replenish linens after guests have left, and work on any necessary repairs as the need may arise. [Dkt. No. 63, ¶ 27.]

While the debtor's business is primarily a motel and the income generated revolves primarily around room fees, it also generates revenue by providing food service to motel guests upon request and sells goods such as prophylactics and aspirin. [Dkt. No. 63, ¶ 24.] These additional business activities are substantial enough to generate around 5% to 7% of the debtor's income. [Id.] The motel does not have a pool, common areas, a business center, gift shop, convenient store or additional services that generate revenues for the debtor. [Dkt. No. 48, ¶ 6(f).] The motel does not have a liquor license, does not operate a bar, does not provide any dry-cleaning or Wi-Fi service to guests, and does not operate a convenience store or gift shop in the premises. [Dkt. No. 48, ¶ 6(i).]

---

[2] OSP has not contested that the value of the real estate property is $550,000.

## IV.    APPLICABLE LAW AND DISCUSSION

### a.    Motion to prohibit use of cash collateral

OSP moves the court to prohibit the debtor from using its cash collateral under section 363(c). [Dkt. No. 16.]  OSP alleges that under section 363(a) it has a secured interest over the debtor's rents and proceeds by way of mortgage deed number 1,182 executed on December 3, 2003 before Notary Public Francisco J. Biaggi Landrón. [Dkt. No. 16-3.]  And the mortgage deed, which was duly recorded pre-petition, provides that the mortgage guarantees and is extensive to the rents and "fruits" or proceeds from the motel. [Dkt. No. 16-3, p. 5.]  Since section 522(b)(2) provides that if a creditor obtained a pre-petition security interest in proceeds payable to the debtor, OSP argues that such security interest extends to post-petition proceeds to the extent provided in the security agreement. The mortgage deed in question specifically provides that the mortgage guarantees and extends to both "fruits" and "due and unpaid rents at the time the creditor demands payment of the guaranteed obligation." [Dkt. No. 16-3, p. 5, translation ours.][3]

The debtor opposes arguing that OSP makes interchangeable references between rents and proceeds, as if they were the same thing in an unwarranted attempt to extend the nature and scope of its alleged secured interest. [Dkt. No. 24.]  The debtor further contends that the mortgage deed only refers to rents and that, as a motel, it does not receive any rent income or payment, it derives income through a room charge or payments for the use or

---

[3] The parties have not submitted certified English translations of the exhibits. OSP sought leave at docket number 16 to file the documents in Spanish, and if an appeal should take, it will submit a certified English translation. The mortgage deed in Spanish provides: "Esta hipoteca garantiza y se hace extensiva a: ". . . (b) los frutos cualquiera que sea la situación en que se encuentren; (c) las rentas vencidas y no satisfechas al tiempo de exigirse el cumplimiento de la obligación garantizada [.]" [Dkt. No. 16-3, p.5.]

occupancy of rooms. Although rents and proceeds or payments for the use or occupancy of the rooms receive the same protection under section 522(b)(2), the debtor argues that they are not the same thing under bankruptcy and state law.

The court agrees with the debtor. Under Puerto Rico law, rents and rooms proceeds are not the same. While section 522(b)(2) provides that a prepetition security agreement extends to after-acquired rents and hotel revenues to the extent provided in the security agreement, under the mortgage deed, OSP has a lien over rents, not over room proceeds. In order to have a perfected security agreement over room proceeds, OSP would need to show that it has a pre-petition recorded UCC financing statement under Puerto Rico's Commercial Transactions Act.

Finally, while it is undisputed that the mortgage deed language extends to "fruits," other than arguing that such civil "fruits" entail proceeds from the motel, OSP has failed to assert why room proceeds are to be considered fruits under Puerto Rico law as opposed to rents. As such, OSP's argument is unavailing and its motion to prohibit use of cash collateral is denied.

### b. Redesignation to Single Asset Real Estate

OSP requests this court to redesignate this debtor as a single asset real estate (SARE) debtor. [Dkt. No. 48.] The debtor opposes. [Dkt. No. 63.] SARE debtors are expressly excluded from being small business debtors pursuant to section 1182(1)(A). Thus, if the debtor is determined to be a SARE, the debtor cannot reorganize under subchapter V.

Section 101(51B) defines the term "single asset real estate." Under section 101(51B), for a case to meet the SARE definition, it must satisfy the following three prongs: "the real property must constitute a single property or project, other than residential real property

6

with fewer than four residential units;" "the real property must generate substantially all of the debtor's gross income;" and the "debtor must not be involved in any substantial business other than the operation of its real property and incidental activities." In re MJS Las Croabas Props., 2012 Bankr. LEXIS 5650, at *7 (Bankr. D.P.R. Dec. 5, 2012).  "The movant bears the burden to prove by a preponderance of the evidence that the Debtor is a SARE." In re 218 Jackson LLC, 2021 Bankr. LEXIS 2284, at *4 (Bankr. M.D. Fla. June 2, 2021).

"Real property is excluded from the definition if the debtor conducts a substantial business on the premises that is not merely incidental to the operation of the property."  2 Alan N. Resnick & Henry J. Sommer, Collier on Bankruptcy ¶ 101.51B (16th ed. 2021).  A "property falls within the third element of the definition of single asset real estate where a debtor's revenues are passive in nature (i.e. collection of rent) and the debtor is not conducting any active business, other than merely operating the real estate and conducting incidental activities such as arranging for maintenance." In re MTM Realty Tr., 2009 Bankr. LEXIS 580 at *8-9 (Bankr. D. N.H. Mar. 9, 2009).  In the context of hotels specifically, a debtor operating an 89-room hotel which provided room cleaning, served continental breakfast, maintained a swimming pool, provided telephone and internet service, and provided laundering services, was sufficiently active in nature to constitute a substantial business and was not a SARE debtor. In re Whispering Pines Estate, Inc., 341 B.R. 134, 136 (Bankr. D.N.H. 2006).

OSP alleges that the debtor's operation of a motel by renting out rooms by the hour, which derives substantially all its revenue from the rental of such rooms, meets all the prongs to be a SARE.  OSP points out that the motel does not have a pool, does not provide complimentary continental breakfast, does not have common areas nor does it rent out

conference rooms for business meetings or similar activities, does not provide internet services to its guests, does not operate a bar or restaurant; and does not provide concierge service to guests.

As such, OSP's asserts that the services provided by the debtor in its motel are similar to the maintenance services provided by an apartment or office building and are just incidental to the operation of the motel. It cites to Centofante v. CBJ Dev. (In re CBJ Dev.) where the Bankruptcy Appellate Panel for the Ninth Circuit noted that "where the debtor's business is more akin to apartment rental, merely calling the business a hotel is insufficient to remove the building from the definition of 'single asset real estate.'" 202 B.R. 467, 472 (B.A.P. 9th Cir. 1996). While OSP acknowledges that the debtor sells some miscellaneous articles such as hamburgers, prophylactics, and aspirin to its guests, it asserts that those sales do not generate a substantial source of income for SARE purposes.

The debtor opposes redesignation to SARE. It argues that it conducts revenue-generating business aside from operating the motel by providing food service to motel guests upon request and by also selling goods such as prophylactics and aspirin. While admitting that its business is primarily a motel and the income generated revolves primarily around its room fees, the debtor points out that these additional business activities are substantial enough to generate what may be around 5% to 7% of its income. The debtor also asserts that none of the income generated from the operation of the motel comes from actions intrinsic to merely owning or managing real estate, but rather it is conducting an active business that requires employees, the number of which fluctuates between 9 and 11, to assist motel guests in checking-in, answer requests for food, accept payments, give routine maintenance upon

8

the guests leaving the rooms, clean and replenish linens after guests have left, and work on any necessary repairs as the need may arise.

The debtor cites to recent case law from the Middle District of Florida bankruptcy court, which recently held that a 79-room hotel with 15 employees and filed under the provisions of subchapter V was not a SARE. In re ENKOGS1, LLC, 626 B.R. 860 (Bankr. M.D. Fla. 2021). In ENKOGS1, the bankruptcy court reasoned that:

> Sections 101(51B) and (51D)(A) of the Bankruptcy Code do not require a debtor to earn extra income from supplying extra services but instead requires the debtor to do something other than merely rent hotel rooms. The statute requires the debtor to do more than 'the business of operating the real property.'
>
> With a hotel, it is easy to meet this test because a hotel debtor does more than just rent hotel rooms on a nightly basis. They must clean the rooms. They must change the linens daily. They must regularly upgrade and maintain the rooms. They must offer a 24-hour receptionist desk. And most hotels, like this one, do much more. The fact that they do not earn separate income from these tasks is irrelevant under the statutory standard. So, courts rarely will classify even an economy hotel that offers no extra services for charge as a 'single asset real estate' project.

ENKOGS1, LLC, 626 B.R. at 865.

This court finds highly persuasive the reasoning in ENKOGS1, 626 B.R. 860. While this debtor is a small motel operating only 22 out of its 40 rooms, renting them by the hour, the nature of the motel business requires that its 9 to 11 employees engage in an active business. After all, these employees need to daily tend to the motel's front desk, phone calls and cash register, launder sheets and linens, provide maintenance to the rooms and repairs as the need may arise, and constantly clean and disinfect the rooms, more so nowadays due to Covid-19 safety protocols. Even if these services are included as part of the room fee paid by the guests, the motel is engaged in the operation of an active business, which is not

9

incidental to just renting or managing real estate. The fact that there is no pool, internet, or continental breakfast being served does not change this analysis. Particularly, in a motel which rents its rooms by the hour, which implies a quick turnover of guests. And, in the instant case, this debtor engages in additional services for its guests such as the sale of food, prophylactics, and aspirins that also generates revenue as part of the operation. When considering all these factors together, this court is of the opinion that this debtor's motel does not fall under the SARE definition.

### c. 1111(b)(2) election

"[S]ection 1111(b) applies in all chapter 11 cases, including subchapter V." In re VP Williams Trans, LLC, 2020 Bankr. LEXIS 2587, at *15 (Bankr. S.D.N.Y. Sep. 29, 2020). The section 1111(b)(2) election "converts a secured creditor's entire claim, including its unsecured deficiency claim, into a secured claim; that is, it overrides section 506(a)'s bifurcation of an undersecured creditor's debt into two claims." 7 Collier on Bankruptcy ¶ 1111.03[4]. Under section 1111(b)(1)(B)(i), the election is not available if the interest of the claimholder in the relevant collateral is "inconsequential." See In re Body Transit, Inc., 619 B.R. 816, 831-32 (Bankr. E.D. Pa. 2020).

After OSP informed it was electing treatment under section 1111(b), the debtor opposed the election.[4] [Dkt. Nos. 81 & 92.] While providing in its plan alternate scenarios for the treatment of OSP's claim contingent on the court's ruling regarding section 1111(b), the debtor argues that OSP is not entitled to the 1111(b) treatment because it holds an interest

---

[4] Under Bankruptcy Rule 3014, a section 1111(b)(2) election is to be made "at any time prior to the conclusion of the hearing on the disclosure statement or within such later time as the court may fix." Fed. R. Bankr. P. 3014. Here, the court had extended the deadline for OSP to make the section 1111(b)(2) election until September 8, 2021. [Dkt. No. 78.] Thus, the election was made timely.

in the collateral of inconsequential value to its claim.[5] The debtor argues that OSP's secured claim is of inconsequential value because the collateral only accounts for 15% of OSP's secured claim. OSP's secured claim is $3,122,439.16 whereas the collateral is valued at $550,000, and CRIM has a senior lien in the amount of $79,501.24 entitled to section 507(a)(8)(B) priority for taxes. The debtor also invites the court to consider other factors such as the state of property, the effect of the pandemic on the debtor's income, and the fact that the election makes it far more difficult for the debtor to reorganize under subchapter V because the property's value cannot sustain the level of secured debt.

A collateral valued at $550,000 is not inconsequential.  The court also notes that said collateral is the only real estate asset of the estate and is essential to the debtor's reorganization under the proposed plan in all its proposed scenarios.  And the debtor has not cited to any authority finding inconsequential for purposes of section 1111(b) a collateral which only accounts for 15% of a secured claim, as the debtor contends. To the contrary, this court adopts and follows the reasoning of the Southern District of New York court in VP Williams Trans, LLC, which denied an objection to the section 1111(b) election based on inconsequential value, by holding that a collateral with a 15.6% value of the total secured claim was not inconsequential.  VP Williams Trans, LLC, 2020 Bankr. LEXIS 2587,

---

[5] If the court rules that OSP is not entitled to the section 1111(b) treatment, the debtor's plan provides that the secured portion of OSP's claim in the amount of $550,000 will be paid, including interest at 4%, with 24 payments of $4,068 starting on the effective date of the plan, 36 payments of $6,756 thereafter, and 36 additional payments of $8,834 thereafter. [Dkt. No. 82, p. 6.] If the court rules that OSP is entitled to the section 1111(b) treatment, the debtor's plan provides that the secured portion of OSP's claim in the amount of $3,122,439.16 will be paid, including interest at 4%, with 36 payments of $4,068 starting on the effective date of the plan, and that no later than the 37th month from the effective date of the plan, the debtor will either: (i) sell the property to a third party and pay in cash and in fill the resulting proceeds of the sale after paying CRIM's secured claim; or (ii) turn over and surrender the property to OSP subject to the secured amount due to CRIM. [Id.]

at *16.  As the <u>VP Williams</u> opinion explains, "[i]f section 1111(b) was supposed to give way in a subchapter V case, or to have a different application in such a case, that was for Congress to say, and Congress did not do so." <u>VP Williams Trans, LLC</u>, 2020 Bankr. LEXIS 2587, at *15. As such, the debtor's opposition to OSP's election for section 1111(b) treatment is denied.

## V.    CONCLUSION

Based on the foregoing, the court denies the motions filed by OSP Consortium LLC to prohibit the debtor's use of cash collateral [at Dkt. No. 16] and redesignate this debtor as a single asset real estate debtor [at Dkt. No. 48].  But the court is allowing the section 1111(b) election made by OSP [at Dkt. No. 81] and therefore denying the debtor's opposition to the section 1111(b) election [at Dkt. No. 92]. The status conference scheduled for January 26, 2022 at 1:30 p.m. is vacated. A separate order and notice scheduling the hearing on confirmation will be entered.

In Ponce, Puerto Rico, this 5th day of January 2022.

SO ORDERED.

Edward A. Godoy
U.S. Bankruptcy Judge

12